Deborah LAUGHTER, Individually and as Parent and Legal Guardian of Minor Child Adams Plaintiff,

v.

AVENTIS PASTEUR, INC., et al.   Defendants.

No. 1:02CV01087.

United States District Court, M.D. North Carolina.

Nov. 12, 2003.

William Marc Graham, Jean Sutton Martin, Lynne M. Holtkamp, Wallace and Graham, P.A., Salisbury, NC, for Plaintiff.

Kirk Gibson Warner, Christopher George Smith, Christopher R. Kiger, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Gavin Bryce Parsons, Gary S. Parsons, Patricia P. Kerner, Bailey & Dixon, David E. Fox, Moore & Van Allen, Mark E. Anderson, Christian M. Kennedy, Patterson, Dilthey, Clay, Bryson & Anderson, LLP, Julia Furr Youngman, Leslie C. O'Toole, Ellis & Winters, LLP, James Donald Cowan, Jr., Smith Moore, L.L.P., Raleigh, NC, Bradley Reid Kutrow, Helms, Mulliss & Wicker, P.L.L.C, Charlotte, NC, Barclay Manley, Fulbright & Jaworski, L.L.P., Richard L. Josephson, Houston, TX, Frederick Rom, Womble, Carlyle, Sandridge & Rice, Research Triangle Park, NC, Hatcher B. Kincheloe, Jr., Hedrick, Eatman, Gardner & Kincheloe, Charlotte, NC, for Defendants.

## MEMORANDUM OPINION AND ORDER AND JUDGMENT

BEATY, District Judge.

### I.  PROCEDURAL HISTORY

Pending before the Court are Defendants' Motions to Dismiss and/or Stay the Complaints filed by Plaintiff, Deborah Laughter, Individually and as Parent and Legal Guardian of Minor Child Adams. Plaintiff has alleged a civil action against multiple manufacturers and distributors of pediatric vaccines containing Thimerosal, a mercury-based preservative. Plaintiff has further alleged that the normal life of her minor child has been adversely affected due to the child's exposure to massive mercury poisoning from the use of pediatric vaccines or their components that were "marketed, tested, labeled, developed, distributed, manufactured, warranted, and sold" by Defendants. Specifically, Defendants in Plaintiff's Complaint are identified in the following manner: Aventis Pasteur, Inc., a Delaware Corporation, Individually and as Successor-in-Interest to Connaught Laboratories, Inc., Pasteur Merieux, and Pasteur Merieux Connaught; SmithKline Beecham Corporation, d/b/a/ GlaxoSmithKline, a Pennsylvania Corporation; Merck & Co. Inc., a New Jersey

Corporation; and Wyeth d/b/a Wyeth, Inc., Wyeth Laboratories, Wyeth–Ayerst, Wyeth–Ayerst Laboratories, Wyeth Lederle Vaccines, and Lederle Laboratories and f/k/a American Home Products Corporation, a Delaware Corporation. For purposes of clarity, the Court will collectively refer to the foregoing Defendants as the "Vaccine Defendants." The remaining Defendants are American International Chemical, Inc., a Massachusetts Corporation; Eli Lilly and Company, an Indiana Corporation; Organon Teknika Corporation, a Division of Organon, Inc., and Organon, Inc., both of which are North Carolina corporations, collectively referred to as the "Organon Defendants"; Sigma–Aldrich Corporation, a Delaware Corporation, and Sigma–Aldrich, Inc., a Wisconsin Corporation, collectively referred to as the "Sigma–Aldrich Defendants"; and Spectrum Laboratory Products, Inc., a California Corporation d/b/a Spectrum Chemicals and Laboratory Products, and f/k/a Spectrum Manufacturing Corporation. Each Defendant or collectively identified group of Defendants filed separate Motions to Dismiss. For instance, the Vaccine Defendants filed a Joint Motion to Dismiss and/or Stay Plaintiffs' Complaint [Document # 6]. The same is true of the remaining Defendants and the document references for their respective motions are listed as follows: American International Chemical, Inc. [Document # 2]; Eli Lilly [Document # 9]; Organon Defendants [Document # 12]; Sigma–Aldrich Defendants [Document # 4]; and Spectrum Laboratory Products, Inc. [Document # 11].

Although not yet consolidated, Plaintiff Laughter's civil action is just one of thirteen separate but identical civil actions brought by multiple Plaintiffs, both individually and as Parents and Legal Guardians of their respective minor children. In particular, each of the Plaintiffs has asserted claims against Defendants in his or her representative capacity on behalf of his or her minor child (or children) that consist of the following counts: Negligence, Negligent Failure to Warn, Inadequate Design or Formulation, Breach of Express Warranty of Merchantability, Breach of Implied Warranties, Negligent Misrepresentation, Intentional Misrepresentation, Negligent Infliction of Emotional Distress, Gross Negligence, and a claim for Punitive Damages. In addition, all of the Plaintiffs' Complaints also allege a specific claim against Defendant Eli Lilly for Negligence in the Marketing, Licensing, and Design of Thimerosal. In addition, all of the Plaintiffs, individually as parents, have asserted their own personal claims against each of the Defendants for what is captioned as the loss of consortium of their minor children.

As previously noted, Defendants each filed separate Motions to Dismiss each of the thirteen cases. Plaintiffs, however, each elected to file only one Joint Response to Defendants' Motions to Dismiss [Document # 20]. To the extent that Defendants alternatively request that the Court stay Plaintiffs' Complaints, Plaintiffs' Response expressed a willingness to consent to Defendants' Motions to Stay if the Court deemed a stay to be the appropriate resolution of these matters. It is clear to the Court that the thirteen separate civil actions filed by the different Plaintiffs raise identical claims. It is also clear that all of the Defendants' Motions to Dismiss assert the same bases for dismissing Plaintiffs' claims. Therefore, in the interest of judicial economy, the Court elects to resolve all of these matters in one Order and Judgment. The Court notes, however, that its reference to documents will be based upon the document entries that are filed in case number 1:02CV01087 by Plaintiff, Deborah Laughter, Individually and as Parent and Legal Guardian of

Minor Child Adams. The Court's Memorandum Opinion and Order and Judgment entered is to be viewed as equally addressing all thirteen of the civil actions filed by the various Plaintiffs in this Court. The Court therefore directs the Clerk of Court to file the Court's Memorandum Opinion and Order and Judgment in the following case numbers: 1:02CV01076, 1:02CV01077, 1:02CV01078, 1:02CV01079, 1:02CV01080, 1:02CV01082, 1:02CV01083, 1:02CV01084, 1:02CV01085, 1:02CV01086, 1:02CV01088, 1:02CV01089.

## II. DISCUSSION AND ANALYSIS

On November 25, 2002, Plaintiffs filed their Complaints against the named Defendants in Durham County, North Carolina Superior Court, asserting the claims as previously listed. On or about December 13, 2002, each of the Defendants consented to removal of this matter to this Court. At various times thereafter, Defendants filed their respective Motions to Dismiss previously identified by the Court. On February 20, 2003, Plaintiffs filed a Joint Response to Defendants' Motions to Dismiss. The substance of each of Defendants' Motions to Dismiss is that the claims filed in this Court by all of the Plaintiffs on behalf of their minor children should be dismissed because they are barred by the National Childhood Vaccine Injury Compensation Act (the "Vaccine Act"), 42 U.S.C. §§ 300aa–1–300aa–34. The Vaccine Act sets forth a scheme for compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa–15. Under the Vaccine Act, a vaccine-related injury is defined as "an illness, injury, condition or death associated with" a vaccine identified in the Act. *Id.* § 300aa–33(5). Congress enacted the Vaccine Act to create "a scheme of recovery designed to work faster and with greater ease than the civil tort system." *Shalala v. Whitecotton*, 514 U.S. 268, 269, 115 S.Ct. 1477, 1478, 131 L.Ed.2d 374 (1995). The Vaccine Act requires that all claims alleging a "vaccine-related injury" be brought initially in the Court of Federal Claims, whereupon they are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa–11(a)(1),–11(a)(2)(A),–12(d). The Act directs an individual who is injured by a vaccine to file a petition with the Court of Federal Claims against the United States Government rather than against the vaccine manufacturers or the doctors who administered the vaccines. After a judgment has been entered by a special master in the Vaccine Court, the petitioner may elect either to accept the judgment or to file a civil action for damages in state or federal court. *Id.* § 300aa–21(a). The Vaccine Act further prevents an individual or someone acting on behalf of the individual from filing a separate civil action without either (1) obtaining a judgment from the Vaccine Court and electing to file a civil action or (2) withdrawing the petition from the Vaccine Court pursuant to § 21(b). *Id.* § 300aa–11(a)(2)(A). The Court of Federal Claims, citing § 11(a)(2)(B) and § 11(a)(3), construed the Act to require that

> if the vaccinee misinterprets or ignores the Court of Federal Claims's jurisdiction over claims brought pursuant to the Vaccine Act, and instead, for whatever reason, files a civil action in state or federal court, the state or federal court must dismiss the claim until the vaccinee exhausts her remedies under the Program.

*Leroy v. Sec'y of HHS*, No. 02–392V, 2002 WL 31730680, at *5 (Fed.Cl. Oct. 11, 2002). Defendants argue that Plaintiffs' present civil actions before this Court are not in compliance with the Vaccine Act's requirement that Plaintiffs exhaust their remedies pursuant to the Vaccine Act before filing separate civil proceedings in state or fed-

eral court on behalf of their minor children who are alleged to have sustained vaccine-related injuries. The Court will separately address Defendants' Motions to Dismiss or Stay Plaintiffs' claims filed in their representative capacities on behalf of their minor children and any individual claims Plaintiffs have alleged.

### A. Plaintiffs' Claims as Parents and Legal Guardians

■ Based upon the language of the Act, Defendants contend that Plaintiffs' Complaints on behalf of their minor children before this Court must be dismissed because each of the Plaintiffs raises claims that are subject to the exclusive jurisdiction of the Court of Federal Claims as vaccine-related injuries. Plaintiffs argue, however, that their claims against Defendants do not fit within the definition of claims for vaccine-related injuries under the Vaccine Act. A review of the Summary of Allegations in Plaintiffs' Complaints suggests otherwise to the extent that Plaintiffs have alleged the following:

1. Since approximately 1983, the manufacturers of Thimerosal and the vaccine companies (hereinafter, the "Defendants") have engaged in the sale and distribution of mercury-laden vaccines to hundreds of thousands of children. The children, their parents and their medical care providers were frequently unaware of the presence of a high toxic preservative, more than 49% mercury by weight, in the vaccines. Over the years, the Defendants continued to sell, market and distribute Thimerosal-containing vaccines without any apparent regard to the cumulative effect on the children who received numerous childhood immunization vaccinations.

. . . .

2. Upon information and belief, the Thimerosal Manufacturers . . . continued to manufacture, distribute and sell Thimerosal to Vaccine Manufacturer Defendants with the knowledge that this toxic substance would be used in vaccines and without any apparent regard for the poisonous effects of the mercury to the children receiving those vaccines.

3. Upon information and belief, Plaintiff Minor Child . . . has developed severe neurodevelopmental disorders with associated high mercury exposure levels as a result of the vaccinations he received, and has suffered permanent injury.

(Defs.' Notice of Removal, Ex. A, Pls.' Compls. ¶¶ 1–3.)

The Court finds that these excerpts and other allegations within Plaintiffs' Complaints clearly fit within the Vaccine Act's definition of a vaccine-related injury or death, which is defined as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table." 42 U.S.C. § 300aa–33(5). Plaintiffs, nevertheless, argue that the Vaccine Act does not apply to their claims because the definition of a vaccine-related injury excludes "an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such a vaccine." *Id.* As Plaintiffs have recognized, this specific exception would apply to exclude their claims from the jurisdiction of the Court of Federal Claims and the procedures of the Vaccine Act only if Thimerosal, the mercury-based preservative included in the pediatric vaccines, is determined to be an adulterant or contaminant. Plaintiffs acknowledge, however, that the weight of authority is contrary to Plaintiffs' position. Defendants particularly reference the fact that the Vaccine Court itself has decisively answered this question. Specifically, the Vaccine Court indicated that "based upon the plain meaning of the statutory terms, any injury arising from the thimerosal pre-

servative in vaccines is encompassed within the statutory definition of 'vaccine-related injury,' thereby granting jurisdiction over such claims to this court." *Leroy v. Sec'y of HHS*, 2002 WL 31730680, at *5. This Court agrees with Defendants and holds that the Vaccine Act applies to Plaintiffs' claims.

■ Having found that the Vaccine Act applies, the only question now before this Court is whether the vaccine-related injury claims that Plaintiffs have before this Court should be dismissed or stayed pending the resolution and exhaustion of these claims in the Federal Court of Claims. Defendants argue that "42 U.S.C. § 300aa–11(a)(5)(B) mandates that the Court dismiss all vaccine-related claims because any pending vaccine-related claims will prevent Plaintiffs from seeking compensation in Vaccine Court." (Eli Lilly's Br. in Supp. of Mot. to Dismiss at 4.) Section 300aa–11(a)(5)(B) provides that "[i]f a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such person may not file a petition under subsection (b) [of this section] for such injury or death." 42 U.S.C. § 300aa–11(a)(5)(B). Plaintiffs respond that Defendants incorrectly rely upon § 11(a)(5)(B) as grounds for dismissal of the claims asserted in this Court because Plaintiffs did not have a pending vaccine-related claim prior to filing a petition in the Vaccine Court. The Court finds that Plaintiffs are

correct that § 11(a)(5)(B) does not technically apply to them because twelve of the thirteen Plaintiffs did in fact file their petitions in the Court of Federal Claims before filing their civil actions in state court on November 25, 2002.[1] Therefore, these twelve Plaintiffs did not have a civil action pending at the time they filed their respective petitions under the Vaccine Act. The key point, however, is that these twelve Plaintiffs did have petitions pending before the Vaccine Court at the time they initiated the civil actions that are before this Court. Therefore, pursuant to § 11(a)(2)(A), Plaintiffs' pending civil actions are subject to dismissal because the Vaccine Act requires that petitioners must first exhaust their remedies under the Act. The Act requires a petitioner to first obtain a judgment from the Court of Federal Claims and then elect either to accept the judgment or file a civil action for damages in state or federal court. *Id.* § 300aa–21(a). If a petitioner has not exhausted his or her remedies in this fashion, then pursuant to § 11(a)(2)(A) he or she is not allowed to bring a civil action related to the claimed vaccine-related injuries in state or federal court. The Court finds that there is no indication in the record that any of the Plaintiffs exhausted their remedies under the Vaccine Act prior to filing their civil actions on November 25, 2002. For these reasons, the Court must grant Defendants' Motions to Dismiss all

---

1. The dates the various Plaintiffs filed their respective petitions with the Court of Federal Claims are listed here: Deborah Laughter, September 6, 2002; Scott and Laura Bono, August 27, 2002; Lucinda McKinnon, September 6, 2002; Kenneth and Jane Lang, September 3, 2002; Frederick and Shelly Kraft, September 5, 2002; Carolyn Hollar, August 27, 2002; John and Patricia Hamilton, September 3, 2002; Thurman and Virginia Hall, July 23, 2002; Tom and Theresa Vollmer, September 3, 2002; Mark and Robin Arnold, August 27, 2002; Brent and Valerie

Koeval, September 3, 2002; Cynthia Davis for child(1), August 27, 2002. As shown, the petitions of these Plaintiffs were pending but not exhausted or resolved by the Court of Federal Claims at the time their civil actions were filed on November 25, 2002.

The Court will separately address the claim of the remaining Plaintiff, Cynthia Davis for minor child(2), who did not file her petition with the Court of Federal Claims until December 12, 2002, well after her civil action was filed in state court on November 25, 2002.

vaccine-related claims that each of the Plaintiffs filed on behalf of his or minor child (or children) as Parent and Legal Guardian in state court on November 25, 2002, which Defendants removed to this Court on December 13, 2002.

■ The Court finds that this same disposition is warranted for the claims filed by Plaintiff Cynthia Davis as Parent and Legal Guardian for Minor Child(2). As previously noted, this particular Plaintiff filed her civil action on November 25, 2002, asserting the same claims against Defendants as did all of the other Plaintiffs. This Plaintiff subsequently filed her petition with the Court of Federal Claims on December 12, 2002. This case is more appropriately addressed by § 11(a)(5)(B), which requires the Court to dismiss Plaintiff's petition on behalf of her minor child because her civil action was pending at the time she filed her petition with the Court of Federal Claims. Therefore, Defendants' Motion to Dismiss with respect to the civil action filed by Plaintiff Cynthia Davis on behalf of minor child(2) must also be dismissed.

B. Plaintiffs' Individual Claims for Loss of Consortium and Loss of Services

Plaintiffs' Complaints include a specific count that is captioned "Parent's Claim For Loss Of Consortium." The actual language in the Complaints, however, states that each Plaintiff has "suffered and will continue to suffer loss of services, comfort, society and companionship of the Minor Child, medical expenses and hospital expenses incurred on behalf of [the] Minor Child, both past, present and future, and the loss of services earnings [sic] and earning ability of [the] Minor Child ...." (Defs.' Notice of Removal, Ex. A, Pls.' Compls. ¶ 95.) Defendants argue that Plaintiffs' claims should be dismissed to the extent that their claims are for loss of consortium because North Carolina does not recognize a claim for loss of consortium outside of the marital relationship. Defendants further argue that North Carolina has specifically rejected the application of the claim of loss of consortium as between parents and children. *Vaughn v. Clarkson*, 324 N.C. 108, 109–10, 376 S.E.2d 236, 236–37 (1989) (per curiam). In fact, the North Carolina Supreme Court in *Vaughn* stated the following:

> In *Nicholson v. Hospital,* this Court expressed its belief that claims for loss of consortium should be limited to the spousal relationship, saying: "If a loss of consortium is seen not only as a loss of service but as a loss of legal sexual intercourse and general companionship, society and affection as well, by definition any damage to consortium is limited to the legal marital partner of the injured. Strangers to the marriage partnership cannot maintain such an action ...."

*Id.* (quoting *Nicholson v. Hosp.*, 300 N.C. 295, 303, 266 S.E.2d 818, 822–23 (1980) (footnote omitted)) (citation omitted). Plaintiffs respond, however, that *Vaughn* is distinguishable because the question in *Vaughn* was whether a child has a claim for loss of consortium against a third party for negligent injuries to a parent. Plaintiffs argue that the facts here are different and that "Defendants have failed to cite any authority for the claim alleged in Plaintiffs' complaint which is whether the *parents* of a child can recover for the loss of services for that child when that child has been injured by the negligent acts of a third party." (Pls.' Resp. to Defs.' Mots. to Dismiss at 22.) Plaintiffs further cite North Carolina cases which have recognized two independent causes of action for a parent when a minor child is injured through the negligence of another. *See Brown v. Lyons,* 93 N.C.App. 453, 458, 378

S.E.2d 243, 246 (1989) (citing *Flippin v. Jarrell*, 301 N.C. 108, 120, 270 S.E.2d 482, 490 (1980)). In *Brown*, the North Carolina Court of Appeals specifically stated:

> When an unemancipated minor child is injured by another party's alleged negligence, two claims arise: (1) a claim on behalf of the child for her losses caused by the injury, and (2) a claim by the parent for loss of *services* during the child's minority and for medical expenses to treat the injury.

*Id.* (citing *Flippin v. Jarrell*, 301 N.C. 108, 120, 270 S.E.2d 482, 490 (1980)) (emphasis added by this Court).

■ Plaintiffs thus argue that North Carolina recognizes a parent's individual claim for *loss of services* to the parent for the child's minority. Defendants, on the other hand argue, that a claim for *loss of consortium* of a minor child is not recognized under North Carolina law. Both the Defendants and Plaintiffs are correct in what they are arguing. It appears, therefore, that the parties' disagreement may be a matter of semantics. However, for the purposes of Defendants' Motions to Dismiss, Plaintiffs' Complaints could be viewed as asserting a claim for loss of consortium, which is not recognized under North Carolina law. The North Carolina Supreme Court in *Vaughn* may have stated it indirectly, that is, that "strangers to the marital partnership cannot maintain such an action," but the North Carolina Court of Appeals in *Edwards v. Edwards*, 43 N.C.App. 296, 302, 259 S.E.2d 11, 15 (1979), put it more directly when it held that "[t]he relation of parent and child supports no legal right similar to that of consortium." The Court must therefore grant Defendants' Motions to Dismiss to the extent that Plaintiffs' Complaints can be read to assert a claim for loss of consortium (as opposed to loss of services) for a parent because of the negligence of a third party.

■ However, to the extent that North Carolina law does recognize a parent's individual claim for loss of services of a minor child as the result of the negligence of a third party, Plaintiffs are not required to assert this claim under the Vaccine Act because Plaintiffs, in their individual capacities, are not persons under the Act who have vaccine-related injuries. The Act clearly states that it "applies only to a person who has sustained a vaccine-related injury or death and who is qualified to file a petition for compensation under the Program." 42 U.S.C. § 300aa–11(a)(9). This language does not encompass Plaintiffs in their individual capacities. The Court believes, however, that Plaintiffs' individual loss-of-services claims are derivative of the vaccine-related-injuries claims Plaintiffs are pursuing on behalf of their minor children within the Court of Federal Claims. Given the Court's dismissal of all vaccine-related claims that each of the Plaintiffs filed on behalf of their minor children as Parents and Legal Guardians pending their resolution pursuant to the Vaccine Act, the Court finds that it is appropriate to stay any individual claims Plaintiffs may have that are recognized under North Carolina law.

## III. CONCLUSIONS

For the reasons stated above, IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that Defendants' Motions to Dismiss each of Plaintiffs' claims filed on behalf of their minor children as Parents and Legal Guardians, including the claim of Plaintiff Cynthia Davis on behalf of minor child(2), are hereby GRANTED.[2] IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that each of Plaintiffs' claims filed on behalf of their

2. The Court's Order and Judgment is intended to address the Motions to Dismiss as filed

minor children as Parents and Legal Guardians, including the claim of Plaintiff Cynthia Davis as Parent and Legal Guardian on behalf of minor child(2), is hereby DISMISSED without prejudice pending the exhaustion and resolution of their Petition filed with the Court of Federal Claims pursuant to the procedures of the Vaccine Act.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Defendants' Motions to Dismiss are GRANTED with respect to each of Plaintiffs' individual claims for loss of consortium and the same are hereby DISMISSED with prejudice.

IT IS FURTHER ORDERED that Defendants' alternative Motions to Stay are GRANTED with respect to each of Plaintiffs' individual claims for loss of services of their minor children pending the exhaustion and resolution in the Court of Federal Claims of the claims filed by Plaintiffs as Parents and Legal Guardians on behalf of their minor children. IT IS FINALLY ORDERED that, with respect to the matters that have been stayed, that is, the claims all Plaintiffs have asserted in their individual capacities for loss of services of their minor children, Plaintiffs shall file a status report with this Court on ninety-day (90) intervals informing the Court of the status of their Petition with the Court of Federal Claims. The first such status report shall be filed with this Court within ninety days of the entry of this Memorandum Opinion and Order and Judgment.

by the following named Defendants: Vaccine Defendants' Joint Motion to Dismiss and/or Stay Plaintiffs' Complaint [Document # 6], American International Chemical, Inc.'s Motion to Dismiss [Document # 2]; Eli Lilly's Motion to Dismiss [Document # 9]; Organon

Defendants' Motion to Dismiss [Document # 12]; Sigma–Aldrich Defendants' Motion to Dismiss [Document # 4]; and Spectrum Laboratory Products, Inc.'s Motion to Dismiss [Document # 11].