864 A.2d 1147 (2005)
374 N.J. Super. 374
James Paul TROXCLAIR, Jr., by his father and Guardian ad Litem, James Paul TROXCLAIR, and Heidi C. Troxclair and James Paul Troxclair, husband and wife, individually, Plaintiffs-Appellants,
v.
AVENTIS PASTEUR, INC., and Eli Lilly and Company, Defendants-Respondents, and
Merck Co., Inc., Lederle Laboratories, Gallipot, Inc., Integra Biosciences, Inc., Medisca, Inc., and Meridian Chemical and Equipment, Inc., Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted November 29, 2004.
Decided January 21, 2005.
*1148 Wilentz, Goldman & Spitzer, attorneys for appellants (Barry R. Sugarman and Brenda Correa, on the brief).
Wilson, Elser, Moskowitz, Edelman & Dicker, attorneys for respondent Aventis Pasteur, Inc. (Martin J. Sullivan, of counsel; Robert C. Neff, Jr., on the joint brief).
McCarter & English, attorneys for respondent Eli Lilly and Company (John F. Brenner, of counsel; Jerry P. Sattin, on the joint brief).
Before Judges LINTNER, PARKER and YANNOTTI.
The opinion of the court was delivered by
*1149 LINTNER, J.A.D.
Plaintiffs, James Paul Troxclair, Jr. (James), an infant by his father and guardian ad litem, James Paul Troxclair, and Heidi C. Troxclair and James Paul Troxclair, individually, appeal from two orders, one entered in April 2003, and the other in December 2003 dismissing their complaint, respectively, against defendants Eli Lilly and Company (Lilly) and Aventis Pasteur, Inc. (Aventis). Both orders were later certified as final for the purpose of appeal.[1]R. 4:42-2.
James was born on March 22, 1988. Between 1988 and 1992, he allegedly received vaccine injections containing thimerosal, a preservative containing mercury used in the manufacture of certain vaccines. The complaint, which was filed on August 21, 2001, alleged that James first began displaying symptoms of neurological damage consistent with mercury poisoning at fifteen months of age and was diagnosed as having mercury poisoning with related mental and physical problems less than one year prior to the filing date of the complaint. Aventis manufactured the vaccines administered to James[2] and Lilly was the manufacturer of thimerosal. Instead of answering the complaint, Lilly and Aventis filed motions to dismiss pursuant to R. 4:6-2(e), asserting that plaintiffs failed to state a claim upon which relief could be granted because they had not first pursued James's claim under the National Childhood Vaccine Injury Act, 42 U.S.C.A. §§ 300aa-1 to -34 (the Act).
On appeal, plaintiffs essentially contend that the trial judge erred in considering the motion under R. 4:6-2(e) because sufficient proof was presented to raise a factual question that the inclusion of thimerosal in the vaccines placed the cause of action outside of the Act. The motion judge correctly determined that the motions were properly brought under R. 4:6-2(e) as turning upon the preclusive application of the Act. We hold that the injuries allegedly caused by the use of thimerosal as a preservative in the vaccines administered to James are vaccine-related as a matter of law under the Act, and plaintiffs' failure, in the first instance, to file and prosecute a claim in the Federal Claims Court bars their State cause of action on behalf of James against the vaccine manufacturer. Accordingly, we affirm the order of dismissal in favor of Aventis. However, we reverse the order dismissing plaintiffs' complaint against Lilly and remand for further proceedings to permit the trial court to determine the status of Lilly as a manufacturer and whether the Act bars the action on James's behalf against the manufacturer of a component part as distinguished from the manufacturer of the vaccine itself.
In 1986, Congress enacted the Act, which "provides a federal no-fault system for compensating vaccine-related injuries or death by establishing a claim procedure involving the United States Court of Federal Claims and special masters." McDonald v. Lederle Labs., 341 N.J.Super. 369, 371, 775 A.2d 528 (App.Div.2001). The Act was prompted by two concerns: 1) the costs of insurance and lawsuits had jeopardized the ability of vaccine manufacturers to supply needed vaccines; and 2) the delays, costs, and uncertainties of tort recovery in the courts served as obstacles to compensating victims of childhood vaccines. Owens v. Am. Home Products Corp., 203 F.Supp.2d 748, 752 (S.D.Tex.2002); McDonald, supra, 341 N.J.Super. at 377-78, 775 A.2d 528; see generally *1150 Shackil v. Lederle Labs., 116 N.J. 155, 181-86, 561 A.2d 511 (1989) (reviewing the history and purposes of the Act).
Thus, the Act establishes a procedure that a claimant must follow before resorting to a traditional tort action against manufacturers of injury-causing vaccines. The Act creates a National Vaccine Injury Compensation Program (the Program) to administer compensation for "vaccine-related injury or death." 42 U.S.C.A. § 300aa-10(a). A claimant must file a petition with the United States Court of Federal Claims, which adjudicates the claim via a special master, a system informally known as the Vaccine Court. Owens, supra, 203 F.Supp.2d at 752. Filing the petition and obtaining a final adjudication by the Vaccine Court is a prerequisite to any civil action. 42 U.S.C.A. § 300aa-11(a)(2)(A). Indeed, if a claimant files a civil action in state or federal court before exhausting the Act's procedure, "the court shall dismiss the action." 42 U.S.C.A. § 300aa-11(a)(2)(B).
The Act is designed in part "to free manufacturers from the specter of large, uncertain tort liability, and thereby keep vaccine prices fairly low and keep manufactures [sic] in the market." Schafer v. Am. Cyanamid Co., 20 F.3d 1, 4 (1st Cir.1994). The Act also benefits claimants. Besides providing a streamlined process of adjudication, a claimant is afforded a lower standard of proof, "under which individuals who suffer injuries within specified intervals after being administered a vaccine, benefit from a presumption that a vaccine caused those injuries." Owens, supra, 203 F.Supp.2d at 752. Thus, Congress sought to afford "an injured party an expedited procedure, thus encouraging the use of the Program and discouraging utilization of the traditional tort-law avenues which ... required proof of causation, injury, negligence and defect...." McDonald supra, 341 N.J.Super. at 378, 775 A.2d 528. A claimant who obtains an award under the Program may choose to accept it, thus waiving any further rights to file a tort action. 42 U.S.C.A. § 300aa-21(a). However, a claimant may decline the award and subsequently pursue the traditional tort remedies. Ibid.; see Owens, supra, 203 F.Supp.2d at 753. If, as here, a timely petition in accordance with the Act is not filed with the Vaccine Court, a claimant is barred from later seeking recovery for injuries resulting from an adverse reaction to a vaccine in a state civil action. McDonald, supra, 341 N.J.Super. at 371-72, 775 A.2d 528.
42 U.S.C.A. § 300aa-11(a)(2)(A) provides in pertinent part:
No person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine ... unless a petition has been filed ... for compensation under the Program for such injury or death.... (Emphasis added.)
Thus, the Act precludes state or federal tort action where the injury is vaccine-related and damages are sought against a "vaccine administrator or manufacturer" until a claimant pursues his remedy under the Program. 42 U.S.C.A. § 300aa-33(3) further defines "manufacture" as meaning "to manufacture, import, process, or distribute a vaccine...." 42 U.S.C.A. § 300aa-33(5) defines "vaccine-related injury or death" as
an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or *1151 contaminant intentionally added to such a vaccine.
The parties do not dispute that the vaccines administered to James are listed in the Vaccine Table. Rather, the dispute centers upon whether thimerosal is an adulterant or contaminant. Plaintiffs contend on appeal, as they did in response to defendants' motions, that the injuries are not vaccine-related because they result from the use of the preservative thimerosal, which was added to the vaccine and constituted an "adulterant or contaminant." In support of their contention, plaintiffs rely upon the affidavits of two experts, a biochemist, Boyd E. Haley, Ph.D., and a board certified toxicologist, Daniel T. Teitelbaum, M.D., both of whom concluded that thimerosal is considered by the medical and scientific community to be an adulterant and contaminant. Plaintiffs also relied upon a July 1999 report from the United States Food and Drug Administration (FDA) and the American Academy of Pediatrics, which announced that the mercury contained in thimerosal could cause exposure in excess of federal guidelines and recommended that vaccine manufacturers reduce or eliminate thimerosal from the vaccine supply as soon as possible. Thus, plaintiffs argue that they established through their experts a question of fact, which should not have been decided in a summary manner by motion. However, contrary to plaintiffs' contentions, the overwhelming federal authority holds that thimerosal is an ingredient used in the manufacture of certain vaccines and, therefore, any injuries caused by it are vaccine-related and subject to the restrictions of the Act. Moss v. Merck & Co., 381 F.3d 501, 503-04 (5th Cir.2004); John & Jane Doe 2 v. Ortho-Clinical Diagnostics, Inc., 335 F.Supp.2d 614, 622-23 (M.D.N.C.2004); Laughter v. Aventis Pasteur, Inc., 291 F.Supp.2d 406, 410 (M.D.N.C.2003); Murphy v. Aventis Pasteur, Inc., 270 F.Supp.2d 1368, 1375 (N.D.Ga.2003); Blackmon v. Am. Home Prod. Corp., 267 F.Supp.2d 667, 673-75 (S.D.Tex.2002); Liu v. Aventis Pasteur, Inc., 219 F.Supp.2d 762, 767 (W.D.Tex.2002); Owens, supra, 203 F.Supp.2d at 754-55; Wax v. Aventis Pasteur, Inc., 240 F.Supp.2d 191, 194 (E.D.N.Y.2002); Leroy v. Sec'y of Dep't of Health & Human Servs., No. 02-392V, 2002 WL 31730680 at *11 (Fed.Cl. Oct. 11, 2002); Cheskiewicz v. Aventis Pasteur, Inc., 843 A.2d 1258, 1265-66 (Pa.Super.2004).
Initially, we note that on November 25, 2002, Congress passed the Homeland Security Act, Pub.L. 107-296 Title XVII §§ 1714 to 1717, which in part amended § 300aa-33, Paragraphs (3) and (5). Specifically, Paragraph (3) was amended to include the following underlined language:
The term "manufacturer" means any corporation, organization, or institution, whether public or private ... which manufactures, imports, processes, or distributes any vaccine set forth in the Vaccine Injury table, including any component or ingredient of any such vaccine.... The term "manufacture" means to manufacture, import, process, or distribute a vaccine, including any component or ingredient of any such vaccine.

[Pub.L. 107-296, § 1714 (Nov. 25, 2002).]
Paragraph (5) was amended by adding language stating "an adulterant or contaminant shall not include any component or ingredient listed in a vaccine's product license application or product label." Pub.L. 107-296, § 1715 (Nov. 25, 2002); see also Pub.L. 107-296, § 1716 (Nov. 25, 2002) (adding similar language to § 300aa-33(7)). The November 25, 2002, amendments to §§ 300aa-33(3), (5) and (7) were made applicable to
all actions or proceedings pending on or after the date of enactment of this Act, unless a court of competent jurisdiction *1152 has entered judgment (regardless of whether the time for appeal has expired) in such action or proceeding disposing of the entire action or proceeding.
[Pub.L. 107-296, § 1717 (Nov. 25, 2002).]
On February 20, 2003, the Homeland Security Act was amended, repealing the November 25, 2002, amendments to §§ 300aa-33(3), (5) and (7) and stating:
No inference shall be drawn from the enactment of sections 1714 through 1717 of the Homeland Security Act of 2002 ... or from this repeal ... regarding the law prior to enactment of sections 1714 through 1717 of the Homeland Security Act of 2002. Further, no inference shall be drawn that ... [this repealer] ... which amended this section and was formerly set out as a note under this section ... affects any change in that prior law, or that Leroy was incorrectly decided.
[Pub.L. 108-7, Div. L. § 102(c), Feb. 20, 2003, 117 Stat. 528 (citations omitted).]
Neither the Act nor its regulations define "adulterant or contaminant." Owens, supra, 203 F.Supp.2d at 754. However, "[i]t appears that every federal court" has uniformly held that thimerosal is not an "adulterant or contaminant," but rather an ingredient or component of the vaccine and that "injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Act." Cheskiewicz, supra, 843 A.2d at 1265-66; see, e.g., Moss, supra, 381 F.3d at 504; Laughter, supra, 291 F.Supp.2d at 410; Blackmon, supra, 267 F.Supp.2d at 673-75; Owens, supra, 203 F.Supp.2d at 754-55, Leroy, supra, 2002 WL 31730680 at *12-13.[3]
Looking at the plain meaning of the Act, the court in Owens, consulted three dictionary definitions.
The definition of an "adulterant" is "a substance which makes an item impure, spurious, or inferior by adding extraneous or improper ingredients." The American Heritage Dictionary 58 (2d ed.1992). A medical dictionary similarly defines adulterant as "[a]n impurity; an additive that is considered to have an undesirable effect or to dilute the active material so as to reduce its therapeutic or monetary value." Stedman's Medical Dictionary 30 (27th ed.2000). And a contaminant is "[s]omething that makes impure or corrupt by contact or mixture." Webster's 9th New Collegiate Dictionary 283 (9th ed.1991).
[Owens, supra, 203 F.Supp.2d at 754-55.]
Owens then considered whether these definitions apply to thimerosal.
Thimerosal, when used in vaccines, fails to correspond with any of these definitions. Vaccine manufacturers intentionally add thimerosal to vaccine formulas because it deters microbial and fungal growth, thereby maintaining the safety, purity and potency of vaccines. In fact, thimerosal has been widely used as a vaccine preservative since the 1930s, and its use satisfies the FDA's requirement that preservatives be added to vaccines distributed in multi-use vials. As such, thimerosal cannot be said to "make impure or corrupt" a vaccine or to reduce a vaccine's therapeutic value. Furthermore, thimerosal cannot be characterized as having an undesirable *1153 effect or diluting the active material found within a vaccine. In fact, the precise opposite is true. As a preservative, thimerosal prevents a vaccine's corruption. Hence, neither the plain meaning of "adulterant" nor "contaminant" applies to thimerosal when, as here, it is purposefully used as an ingredient in the approved formulation of a vaccine.
[Id. at 755 (citations omitted).]
Additionally, the Owens court pointed out that Congress's use of the words "associated with" to define "vaccine-related injury" of listed vaccines also requires a finding that thimerosal is an ingredient covered by the Program. Ibid. It then reasoned:
A "vaccine" is defined as a "suspension of attenuated or killed microorganisms," and "a preparation of killed microorganisms, living attenuated organisms, or living fully virulent organisms." Neither of these definitions indicates that a vaccine is comprised of microorganisms alone. On the contrary, they indicate that a vaccine is a "suspension" or "preparation" composed of both microorganisms and additional ingredients. And, as explained above, manufacturers of vaccines add thimerosal to the "preparation" or "suspension" of vaccines.
[Ibid. (citations and footnotes omitted).]
Concluding that children's injuries that are linked to vaccine ingredients are "definitely `vaccine-related,'" Owens found that "children's injuries cannot be `thimerosal-related' without being `vaccine-related'" under the "plain language of the Vaccine Act." Id. at 755-56.
The approach exemplified by Owens is consistent with that taken by the Vaccine Court itself in the decision in Leroy, cited in the most recent amendment to the Homeland Security Act. There, the Vaccine Court approved the reasoning of Owens and the other cases. Leroy, supra, 2002 WL 31730680 at *5. Subsequent federal cases have cited Leroy in support of the same conclusion. Moss, supra, 381 F.3d at 504; Laughter, supra, 291 F.Supp.2d at 411. Likewise, we are in accord with these rulings.
Agreeing with defendants that an injury from thimerosal is vaccine-related, the motion judge noted that he had formerly held in two unrelated cases that thimerosal is "an FDA-licensed component of the vaccine ... included in multi-dose vaccine vials and is designed to preserve the vaccine's effectiveness." Pointing out that the FDA had approved the use of thimerosal as an ingredient in the vaccines administered to James, the judge found that he was not required at the motion-to-dismiss stage to accept the complaint's allegation that thimerosal is an adulterant or contaminant. Citing Owens, the judge correctly concluded that thimerosal is a constituent material of vaccines, James's injuries are vaccine-related, and the Law Division lacked jurisdiction because plaintiff had not first exhausted relief under the Act. We are satisfied that the motion judge correctly found that thimerosal is an ingredient when intentionally used as a preservative in a vaccine and any injuries resulting from its use are vaccine-related under the Act.
We also agree, contrary to plaintiff's argument, that the issue was ripe for disposition under R. 4:6-2(e). While a trial court must grant a plaintiff all reasonable inferences from allegations of fact when considering a R. 4:6-2(e) motion, it need not accept a plaintiff's experts' opinions when they bear upon construction of a statute or a matter of law. See, e.g., Body-Rite Repair Co. v. Dir., Div. of Taxation, 89 N.J. 540, 543, 446 A.2d 515 (1982) (observing that expert testimony "has little or no relevance to the interpretation of statutory language"). Stated simply "[i]t is settled that [t]himerosal, when used as a *1154 preservative, is a component of a vaccine rather than an adulterant." Moss, supra, 381 F.3d at 503-04 (citing Leroy, supra, 2002 WL 31730680 at *4-5). We are satisfied that the federal courts, including the Vaccine Court, have established that thimerosal, when used as a preservative in a vaccine, is an ingredient and injuries related to its use come under the umbrella of the Act as vaccine-related as a matter of law.
Likewise unavailing is plaintiffs' contention that the February 20, 2003, amendment removing the language from § 300aa-33(5) that "an adulterant or contaminant shall not include any component or ingredient listed in the vaccine product license application or product label" reflects Congress's intent that thimerosal be treated as an "adulterant or contaminant." The federal court decisions holding that thimerosal is not an adulterant or contaminant have been rendered under both the original and present version of § 300aa-33(5). Moss, supra, 381 F.3d at 503-04; Owens, supra, 203 F.Supp.2d at 754-55. More importantly, the expressed statement of Congress in the 2003 amendment provided that "no inference shall be drawn that [the repeal of the pertinent amendment] affects any change in that prior law or that Leroy was incorrectly decided." Pub.L. 108-7, Div. L. § 102(c), Feb. 20, 2003, 117 Stat. 528 (citation omitted).
As previously noted, § 300aa-11(a)(2)(A) operates to preclude prior state court action involving vaccine-related injury against a "vaccine administrator or manufacturer." Although not raised as an issue in this appeal, the appellate record supports the conclusion that Lilly manufactured thimerosal. Plaintiffs' complaint alleged that Lilly and other defendants not involved in this appeal sold thimerosal to other defendants, including Aventis, who then added it to the vaccines in the vaccine manufacturing process. The complaint also expressly distinguished between the "vaccine manufacturers and thimerosal manufacturers." The certification and brief filed by Lilly in support of its motion to dismiss in the Law Division acknowledged that Lilly was the manufacturer of thimerosal.[4]
We are cognizant that when the distinction between manufacturers of a completed vaccine and a component ingredient has been raised, federal courts have found that tort actions against manufacturers of components, such as thimerosal, are not restricted by the Act. Moss, supra, 381 F.3d at 503-04; John and Jane Doe 2, supra, 335 F.Supp.2d at 624; Blackmon, supra, 267 F.Supp.2d at 678; Liu, supra, 219 F.Supp.2d at 767; Owens, supra, 203 F.Supp.2d at 758-59; cf. Laughter, supra, 291 F.Supp.2d at 410-11 (staying claims against manufacturers of vaccine and thimerosal pending adjudication in the Vaccine Court). Moreover, the February 2003 amendment to § 300aa-33(3) repealed the language added by the November 2002 amendment, extending the definition of manufacturer to those who manufacture "any component or ingredient of any such vaccine." In Moss, supra, 381 F.3d at 503-04, the Fifth Circuit specifically held that Lilly was not entitled to the protection of the Act's restriction on filing lawsuits outside the Program because it manufactured a component (thimerosal) rather than a "completed vaccine."
Because the issue of Lilly's manufacturing status as it may relate to § 300aa-11(a)(2)(A) of the Act, protecting vaccine manufacturers and administrators, has not *1155 been argued before either the motion judge or us, we are constrained to reverse and remand the order of dismissal in favor of Lilly to permit further proceedings. Other than noting the applicable case law, our reversal should not be taken as indicating a position on our part as to whether Lilly is entitled to protection under the Act. We leave that issue to further proceedings in the Law Division, where the facts respecting Lilly's status as a manufacturer can be presented and argued along with the applicable law. Accordingly, we affirm the order dismissing plaintiffs' complaint against Aventis but reverse and remand the order of dismissal in favor of Lilly. We do not retain jurisdiction.
Affirmed in part; reversed and remanded in part.
NOTES
[1] Plaintiffs' complaint was dismissed in its entirety on December 1, 2003.
[2] Aventis manufactured three vaccines containing thimerosal that were administered to James: DTP, DT, and HIB (HbPV).
[3] The only arguably contrary opinion was King v. Aventis Pasteur, Inc., 210 F.Supp.2d 1201, 1215 (D.Or.2002), in which the court summarily adopted the finding of a magistrate that a thimerosal-caused injury is not vaccine-related. The magistrate did not attempt to reconcile the substantial body of case law reaching the opposite conclusion and the persuasiveness of King was questioned by the Vaccine Court in Leroy, supra, 2002 WL 31730680 at *11.
[4] The joint appellate brief filed on behalf of defendants does not distinguish Lilly as the manufacturer of a component.