Joseph D. and Theresa P. HEBERT, legal representatives of a minor child, Joseph David HEBERT, Michael and Claudia Popson, legal representatives of a minor child, Jeremy Thomas Popson, A. Tom and Lisa Canaday, legal representatives of a minor child, Daniel T. Canaday, John T. Boyce and Jeannie Wakelyn–Boyce, legal representatives of a minor child, Austin Michael Boyce, John Cloar, legal representative of a minor child, Thomas Jake Cloar, Charles Weinstein and Amy Holmes, legal representatives of a minor child, Michael D. Weinstein, Dennis and Ginger Brown, legal representatives of a minor child, Robert Lee Brown, Robert G. and Rita Parry, legal representatives of a minor child, Robert J. Parry, Phil and Kathy Jo Boriskie, legal representatives of a minor child, Matthew Boriskie, A. Lamar and Juanice Glaze, legal representatives of a minor child, Christopher Glaze, A. Lamar and Juanice Glaze, legal representatives of a minor child, Matthew Jameson Glaze, A. Lamar and Juanice Glaze, legal representatives of a minor child, Lauren Alexandra Glaze, Petitioners,

v.

### SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent.

Nos. 02–2050V, 02–2052V, 02–2053V, 02–2055V, 02–2058V, 02–2059V, 02–2060V, 02–2063V, 02–2064V, 02–2065V, 02–2066V, 02–2067V.

United States Court of Federal Claims.

April 8, 2005.

Michael L. Cave, Cave Law Firm, Baton Rouge, LA, for Petitioners. With him on the briefs was Roberto Villasante, Miami, FL, of counsel, who argued at oral argument.

Traci R. Patton, Department of Justice, Washington, DC, for Respondent, who argued at oral argument. With her on the briefs were Ann K. Donohue, Trial Attorney; Vincent J. Matanoski and Mark W. Rogers, Assistant Directors; John L. Euler, Deputy Director; Timothy P. Garren, Director; and Peter D. Keisler, Assistant Attorney General.

Tahmineh I. Maloney, Law Clerk and Berta Treitl, Intern.

## OPINION

BASKIR, Judge.

Petitioners seek review of the Special Master's dismissal of their Petitions for Compensation ("Petitions") under the National Childhood Vaccine Injury Act of 1986 ("Vaccine Act" or "Act"), 42 U.S.C. §§ 300aa–1 *et seq.*, as time-barred. **Petitioners contend that the Act's statute of limitations Incorporates state tolling statutes for minors. We conclude otherwise, and DENY the Petitions for Review.**

## Background

Through the Vaccine Act, Congress mandated the establishment of a National Vaccine Program "to achieve optimal prevention of human infectious diseases through immunization and to achieve optimal prevention against adverse reactions to vaccines." 42 U.S.C. § 300aa–1. The Act also established the Vaccine Injury Compensation Program ("Program"), to provide compensation for vaccine-related injuries and deaths. *See* 42 U.S.C. § 300aa–10.

This is one of twelve cases, each presenting the same legal issue involving the Act's statute of limitations. In each case, the petition was filed more than 36 months after the "occurrence of the first symptom or manifestation of the onset of injury" but before the child achieved the age of majority under State of Louisiana law. Petitioners in each of the cases were represented by the same attorney. Each claim cited Louisiana State Law, and so we presume that each petitioner is a resident of Louisiana. Each petition was dismissed by the Special Master after rejecting the identical legal position advanced by counsel. A timely Motion for Review was filed in each instance.

In each case, Petitioners filed claims for compensation under the National Childhood Vaccine Injury Act on behalf of their minor children. Petitioners allege that their children received vaccinations which caused them to suffer autism.

For purposes of this motion, we need not consider whether the vaccines were the cause of the autism. Instead, we limit our discussion to facts relating to the timeliness of Petitioners' actions. The parties do not dispute that the children in question have autism. It is further uncontested that the Petitions were filed after the expiration of the Act's 36–month filing deadline. The sole issue in dispute is whether the Act's statute of limitations can be tolled, either due to preemption by the applicable state statute of limitations or due to an implied exception in the Act that incorporates State tolling statutes for minors.

## Procedural Note

Because they presented identical legal issues, on February 17, 2005, we consolidated these twelve cases for purposes of case management pursuant to Rule 42(a) of the Rules of the U.S. Court of Federal Claims. The parties were provided an opportunity to object to consolidation and did not respond with any objections. *See* Order dated Dec. 21, 2004. We should note that "consolidation under Rule 42(a) is simply a procedural device" and "does not merge [multiple] claims into a single claim, nor does it change or expand the parties' rights." *S. Cal. Fed. Sav. and Loan Assoc. v. United States,* 51 Fed.Cl. 676, 678 (2002).

## Standard of Review

We may set aside the decision below with respect to "any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa–12(e)(2)(B); *see also Munn v. Sec'y of Health and Human Servs.,* 970 F.2d 863, 870 n. 10 (Fed.Cir.1992). We review the Special Master's conclusions of law *de novo. See, e.g., Goetz v. Sec'y Health and Human Services,* 45 Fed.Cl. 340, 341 (1999); *Ashe–Cline v. Sec'y Health and Human Services,* 30 Fed.Cl. 40, 44 (1993). Here we review the Special Master's legal determination respecting the Act's statute of limitations.

## Discussion

Petitioners allege that their filing deadline should be extended due to their State's statute of limitations related to minors bringing actions, which tolls the period until the minors reach majority. Plaintiffs allege that this so-called "statutory tolling" would allow their claim to be filed well within the Act's 36–month statute of limitations.

Each of these cases arises in Louisiana, where we presume the Petitioners are residents. The age of majority in Louisiana is 18. La. C.C. Art. 29. The State's product liability statute, presumably the State's tort analog for a federal Vaccine Act claim, is the Louisiana Products Liability Act, La. R.S. 9:2800.54. A provision in the Louisiana Civil

Code tolls claims brought under the Louisiana Products Liability Act during the claimant's minority:

> Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or other damages is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.

La. C.C. Art. 3492. This is the state provision that Petitioners seek to read into the Vaccine Act's statute of limitations. Again, for purposes of this case, (and noting the Respondent's objection) we assume that this is the appropriate statutory tolling provision and that if Petitioners are correct, would toll the Act's 36-month provision until each of the children becomes 18.

The Vaccine Act contains an explicit statute of limitations within which petitions seeking relief may filed. It provides that:

> a vaccine set forth in the Vaccine Injury Table which is administered after the effective date of this part, if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury...

42 U.S.C. § 300aa–16(a)(2).

In *Brice v. Secretary of the HHS (Brice)*, the U.S. Court of Appeals for the Federal Circuit held that equitable tolling was not available for claims arising out of section 16(a)(2) of the Act, which applies to vaccines administered after the effective date of the Act. In precluding an action in this Court as time-barred, the Federal Circuit did not address whether state court remedies remained in those circumstances. 240 F.3d 1367 (Fed. Cir.2001).

Under the Act, access to state tort remedies is deferred, not abolished. First, the Act requires that an initial petition be filed under the Program before a state court remedy may be pursued. The state statute of limitations is then tolled:

> The Act does not entirely preclude traditional tort remedies. However, before an individual may bring an action seeking more than $1,000 in damages in state or federal court, he must first file a petition under the Program. *See* 42 U.S.C. § 300aa–11(a)(2)(A). The filing of a petition under the Program stays the running of state statutes of limitations. *See* 42 U.S.C. § 300aa–16(c). The Act then gives a petitioner the choice to adopt the judgment obtained under the Program and surrender his tort rights or to reject that judgment and pursue a civil action for damages. *See* 42 U.S.C. § 300aa–21(a). We need not decide in this case whether a petitioner who fails to file a timely petition under the Program may still pursue traditional tort remedies.

*Brice*, 240 F.3d at 1368.

Second, a petitioner may seek relief in state court if a decision is not rendered under the program within the allotted time. *See* 42 U.S.C. § 300aa–21(b).

Third, as the quoted portion implies, actions seeking $1,000 or less need not first be brought under the Act.

*Congressional Intent*

Thus, while the federal statute directly modifies state statutes of limitations, there is no explicit indication that the federal statute of limitations is modified by state law. As counsel acknowledged at argument, at bottom the question in these cases is whether Congress intended to incorporate state minority tolling statutes into the federal law. To answer this question, we look to the standard sources—the text of the statute, its overall scheme and purpose, and its legislative history.

In this particular endeavor, we are guided—indeed, compelled—by the decision of the Federal Circuit in *Brice*. The Court was called upon to answer a similar question involving the Act's statute of limitations—did Congress intend to incorporate as an exception to the statute's 36-month limitation period, the judicially fashioned concept of equita-

ble tolling? We read the analysis as the Circuit Court's definitive articulation of congressional intent, one which is applicable to our circumstances. The theme that pervades *Brice* is Congress' intent to provide a federal compensation program that resolved claims promptly.

The Court began its analysis by observing that Congress had two over-arching goals in mind. First, it sought to address the damaging effect that state tort litigation might have on manufacturers of vaccines. Second, and central to the issue in *Brice* as well as for us, Congress sought to displace those state tort remedies by a federal alternative. In place of the "limited, time-consuming, [and] expensive" tort avenues, the federal alternative would be prompt, less demanding on the claimant, and generous:

> Congress intended awards under the Act to be made 'quickly, easily, and with certainty and generosity.' Congress also emphasized the importance of speed and the quick resolution of petitions: 'The entire proceeding—from date of filing through Special Master proceedings and court review—is to take place as expeditiously as possible....'

*Brice*, 240 F.3d at 1368–69 (internal citations omitted).

While recourse to state tort remedies is still possible, the Act modifies state law in certain respects. It explicitly tolls state statutes of limitations while the federal claim is processed; it eliminates punitive damages; and it modifies some aspects of liability. These changes were justified, again, by the expeditious nature of the federal program. The Court quoted from the legislative history:

> Much of the equity in limiting compensation and limiting other remedies arises from the speed and reliability with which the petitioner can expect judgment; without such quick and certain conclusion of proceedings, the compensation system would work an injustice upon the petitioner.

*Brice*, 240 F.3d at 1369 (internal citations omitted).

The Court cautioned that the Act's statute of limitations is a condition on the waiver of sovereign immunity. Thus, courts should be mindful that they respect congressional intent when considering qualifications that extend the limitation period. The Circuit Court then went on to examine the Supreme Court's expressions on the subject of equitable tolling against the Government, noting that the "decisions do not speak with perfectly clarity on the subject," not an infrequent complaint from lower courts. *Brice*, 240 F.3d at 1370.

The Court chose to follow the Supreme Court case *United States v. Brockamp*, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), and its own ruling in *RHI Holdings, Inc. v. United States*, 142 F.3d 1459 (Fed.Cir. 1998), two cases involving limitations provisions of the Internal Revenue Code. It dismissed as inapplicable the competing precedent of *Bailey v. West*, 160 F.3d 1360 (Fed. Cir.1998) (*en banc*), which involved the "uniquely benevolent statutory framework" of the Veterans Benefits Act. *Brice*, 240 F.3d at 1373.

Two aspects of the Vaccine Act were central to the Court's conclusion that Congress did not intend to read into the statute an exception for equitable tolling. First, the Act has only one explicit exception that "tolls" the federal limitations period—when a petition invoking the federal program is misfiled in state court it discharges the federal statute of limitations. *See* 42 U.S.C. § 300aa–11(a)(2)(B). The court applied the well-worn construction principle that the explicit expression of one element precludes the addition of others by implication. Of course, one might counter that Congress reasonably assumed that judicially created doctrines of equity need not be reaffirmed explicitly in the statute since courts were expected to apply the doctrines unless clearly forbidden by the legislation.

Second, and far more persuasive, is the Court's recognition that the Act is replete with internal deadlines, all designed to make the federal program swift and certain. The Court noted two: Special Masters must render decisions within 240 days, 42 U.S.C. § 300aa–12(d)(3)(A)(ii); and, Special Master

suspensions may not exceed 180 days, 42 U.S.C. § 300aa–12(d)(3)(C). The Court might well have included at this point that, as we previously mentioned, petitioners are free to have recourse to state tort proceedings if the special master fails to render a decision on their petition within 240 days, excluding any period of suspension or remand. *See* 42 U.S.C. § 300aa–21(b)(1). And, as respects review by the United States Court of Federal Claims, the court's review must be completed within 120 days from the filing of a response to a motion for review of the special master's decision, excluding any period of remand. *See* 42 U.S.C. § 300aa–12(e)(2). These internal deadlines are explained as part of the benefits offered by the federal program and as evidence of the intent to offer "speed and reliability" in the federal program. Once again, the Court refers to the legislative history, repeating a quote we have already cited:

> In this connection, we note that the legislative history of the Act emphasizes the importance of quick resolution of claims. For example, Congress noted that much of the equity in limiting compensation and limiting other remedies arises from the speed and reliability with which the petitioner can expect judgment.

*Brice*, 240 F.3d at 1373 (internal citations omitted).

Although not beneficial to Petitioners, there is also the triggering event of the Program's statute of limitations—36 months after the date of the occurrence of the first symptom or manifestation of onset. This may be harsh compared to a trigger based on petitioner's knowledge of the significance of the symptoms. But it certainly evidences a congressional intent to have the limitations begin to run at the earliest possible date. *See Setnes v. United States*, 57 Fed.Cl. 175, 181 (2003) ("The court is not holding that a medical or psychological diagnosis or verification of the 'occurrence of the first symptom or manifestation of onset' begins the running of the statute of limitations."); *Lemire v. Sec'y of Health and Human Services*, 60 Fed.Cl. 75, 79 (2004) (interpreting *Setnes* as drawing a distinction between "subtle" and "clear evidence of an injury or disease").

Incorporating the doctrine of equitable estoppel or state tolling statutes would conflict with the congressional requirement of early submission of claims and its goal of prompt resolution. By contrast, equitable estoppel "invites prolonged and wasteful collateral litigation concerning the running of the statute of limitations." *Brice*, 240 F.3d at 1373. We can assume reading into the federal statute of limitations state minority tolling statutes might not cause as much collateral litigation—assuming there is no dispute as to which state tolling statute applies and for how long. But it certainly would delay resolution of the claims for years, far longer than resolving estoppel contentions. The Federal Circuit noted it took five years for the *Brice* case to come before it for review and that there were over thirty additional cases involving estoppel tolling. *Id.* If we accept petitioner's theory, it might take ten years or more for the litigation of tolled claims to begin and that scenario could apply to every claim involving a child.

These expressions of legislative intent to move petitions quickly through the process and, we have to add, to disqualify as untimely, petitions that are filed more than 36 months after the early triggering of the period—are incompatible with equitable tolling. That incompatibility exists with even more force with regard to state minority tolling statutes. Their inclusion would entail extended delay in every case involving a minor child.

These claims would exist in limbo for years until the child reached 18 years, the age of majority in Louisiana. The general purpose of minority tolling statutes would not likely be served by such delay since in many cases, the affected child might be no more capable of pursuing his or her claim after achieving majority than as a child. Moreover, all the detriments of delayed litigation would attend the federal program. Instead of being faster than state tort claims, it would become equally slow.

We must conclude, therefore, that inclusion of state minority tolling statutes would be incompatible with the Program's statutory scheme.

*New "Precedent"*

The Petitioners contend that the Special Master failed to apply "new precedent," namely, two cases decided by our sister circuits—one by the Ninth Circuit and one by the Fifth Circuit. *O'Connor v. Boeing North American, Inc.,* 311 F.3d 1139 (9th Cir.2002); *Moss v. Merck & Co.,* 381 F.3d 501 (5th Cir.2004). These non-binding cases are clearly distinguishable.

In *O'Connor,* the Ninth Circuit addressed the effect that a *different* federal statute (the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA)) had upon California's statute of limitations. California's statute required a plaintiff to bring a personal injury or wrongful death claim within one year from the date of injury. If California's statute of limitations applied, the plaintiffs' state suits would be time-barred.

However, CERCLA provided an exception to state statutes of limitations for hazardous substance cases. Instead of the statute beginning to run upon the date of injury, under CERCLA, it began on "the date the plaintiff knew (or reasonably should have known) that the personal injury...was caused or contributed to by the hazardous substance or pollutant or contaminant concerned." 42 U.S.C. § 9658(b)(4)(A). The court held that CERCLA preempted California's rule and that the California limitations period did not commence until Plaintiffs knew or should have known of their claim. *O'Connor,* 311 F.3d at 1146.

The Petitioners would have us "write-in" CERCLA's language to the Vaccine Act and change the triggering event to the date the significance of the symptoms became known. However, in contrast to CERCLA, as we have repeatedly observed, the Vaccine Act explicitly rejects triggering the statute of limitations only when a plaintiff "discovers" the claim. The Federal Circuit has explicitly held that "the statute of limitations here begins to run upon the first symptom or manifestation of the onset of injury, even if the petitioner reasonably would not have known at that time that the vaccine had caused an injury." *Brice,* 240 F.3d at 1373. In any event, a case in which a federal statute modifies a state statute of limitations is of limited help for the converse—when the issue is whether a state statute modifies a federal statute of limitations.

Petitioners' other cited case, *Moss v. Merck & Co.,* 381 F.3d 501 (5th Cir.), also has no relevance to this matter. In *Moss,* the plaintiffs sued a number of corporations directly seeking tort remedies without first filing a petition under the Act. Some of the defendants were admittedly vaccine manufacturers, and so properly took refuge in the provision that precludes direct tort remedies without prior recourse to the Act. Another, Eli Lilly, was the manufacturer of Thimerasol, a component of the vaccine, but not—the Court ruled—the vaccine itself. Consequently, the plaintiffs were not required to first exhaust their federal remedies as to that defendant. Similarly, claims by other plaintiffs for tort relief not involving Program claims—plaintiffs other than the injured child and not directly involving vaccine injuries—are not covered by the Act, and so may be pursued by tort.

While the case is instructive as respects the Act's allocation of vaccine-related causes of action between State tort suits and Program petitions, it has no relevance to our concerns. The opinion concludes with a passing comment about the limits of federal preemption of state claims, rejecting an implicit legislative intent to bar more than the plain statutory language. *Moss,* 381 F.3d at 505. If anything, this observation in *Moss* is actually harmful to petitioners' thesis.

*Other Theories*

In briefing, Petitioners invoke an equal protection claim, but fail to articulate their legal argument. They offer no citations to case law, or other legal authority. As near as we got to a theory was counsel's argument that the Act somehow discriminated between petitioners relying on the Table, and others, like petitioners here, who are off-Table. Presumably, as a practical matter, the latter class must not only perceive the symptoms or manifestations but must also comprehend their significance under the Act. Table-case petitioners need only compare the event to the Table. We have not been provided with

the barest sketch of a legal argument. Accordingly, we reject the equal protection claim.

Finally, the Petitioners argue that "tolling provisions of state statutes of limitation based on minority must be applied as the initial point for a determination of the commencement of the § 300aa–16(a)(2) bar, unless specifically preempted." Pet's. Motion at 2. In support of this argument, Petitioners' counsel cited in his brief *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Once again, counsel did not elaborate on his citation to *Erie* either in his papers or at Oral Argument. The Act establishes a federal cause of action and its own statute of limitation. As we have seen, state law is not wholly preempted; indeed, state tort law is still available under certain circumstances. State statutes of limitations are explicitly stayed during the pendency of the federal action. Except for this tolling of state statutes of limitation and another involving misfiled claims, the Act contains no other reference to state statutes of limitations.

### Conclusion

Our dry and legalistic analysis of the Act and the application of binding precedent obscures the personal tragedy so poignantly contained in each of these cases. Although the monetary compensation offered under the program cannot be complete compensation for this suffering, it would ameliorate the financial impact of lifelong conditions. Regrettably, even that inadequate relief is not available in these companion cases.

As a Court, we must deal with the law as it is, not as we would have it. As a consequence, **we must reject the Petitioners' efforts to extend the statute of limitations, deny their Petitions for Review, and affirm the decisions of the Special Master.**

**IT IS SO ORDERED.**