United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 26, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-60773

MABLE ANNETTE HUGHES MCDONAL, Parent and Next
Friend of Jamielee Hughes McDonal; DARRYL A. MCDONAL,
Parent and Next Friend of Jamielee Hughes McDonal,

Plaintiffs - Appellants,

versus

ABBOTT LABORATORIES, ET AL.,

Defendants,

ABBOTT LABORATORIES, INC; AMERICAN HOME
PRODUCTS CORP, doing business as WYETH LABORATORIES;
WYETH-AYERST; WYETH-AYERST LABORATORIES; WYETH
LEDERLE; WYETH LEDERLE VACCINES; LEDERLE
LABORATORIES; AVENTIS PASTEUR INC., Individually and as
successor in interest to CONNAUGHT; BAXTER INTERNATIONAL
INC.; ELI LILLY & CO; EMERCK; GDL INTERNATIONAL, INC;
GLAXOSMITHKLINE, Individually, and as successor in interest to
SMITHKLINE BEECHAM CORP; MERCK & COMPANY INC;
SIGMA ALDRICH, INC; SPECTRUM CHEMICAL MANUFACTURING
CORP; URQUIMA; MITZI FERGUSON, MD; LESLIE LAMAR JONES,
MD; RIVER OAKS HOSPITAL;

Defendants - Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi

Before HIGGINBOTHAM, STEWART, and PRADO, Circuit Judges.

CARL E. STEWART, Circuit Judge:

In this products liability action, plaintiffs and Mississippi residents Mabel and Daryl McDonal ("the McDonals") filed suit against various foreign and local defendants — the manufacturers and distributors of Thimerosal, the manufacturers of the vaccines which contained Thimerosal, the doctors who administered the vaccines, and River Oaks Hospital. On appeal, the McDonals challenge the district court's denial of their motions for a remand to state court and the concomitant dismissal of their state law claims against both Mississippi resident and nonresident defendants. At the outset, we consider the threshold inquiry of subject matter jurisdiction, on the basis of complete diversity of citizenship, in order to ascertain whether the district court erred in its application of the improper joinder doctrine.[1] We hold that the district court's denial of the plaintiffs motion to remand was appropriate, consequently, for slightly different reasons than asserted by the district court, we affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The McDonals, as the parents of four-year-old Jamielee Hughes McDonal ("Jamielee"), brought this action, on behalf of Jamielee, who suffers from profound mercury poisoning. The McDonals allege that Jamielee's poisoning was the result of her exposure to sizeable doses of mercury contained in a preservative, known as Thimerosal, used in childhood vaccines. Specifically, the McDonals allege that through a normal regimen of early childhood vaccinations, Jamielee built

---

[1] This circuit has adopted the term "improper joinder," rather than "fraudulent joinder." See Smallwood v. Ill. Cent RR Co., 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc). While there is no substantive difference between the two terms, the phraseology "improper joinder" is preferred.

2

up a cumulative body burden of mercury nearly 30 times the permissible limit authorized by the Environmental Protection Agency.

On December 19, 2001, the McDonals commenced an action in Mississippi state trial court against various diverse and non-diverse defendants[2] seeking to recover damages arising from Jamielee's poisoning. The complaint averred state law claims of strict liability, negligence, and breach of warranty against the manufacturers of vaccines (collectively, "the Vaccine defendants") and the manufacturers of thimerosal (collectively, "Thimerosal defendants"). The McDonals also alleged a claim for medical malpractice, against the two Mississippi physicians and the Mississippi hospital (collectively, "Healthcare defendants"), predicated on a theory of failure to warn of the inherent dangers embedded in potential side effects stemming from Thimerosal-containing vaccines and a failure to recommend Thimerosal-free vaccines.

On January 25, 2002, Eli Lilly and Company ("Eli Lilly") removed the action to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332 and federal question jurisdiction pursuant to 28 U.S.C. § 1331. Eli Lilly's removal petition contended that complete diversity existed on the basis that the resident Healthcare defendants had been improperly joined. Eli Lilly also contended that a federal question existed because, under the National Childhood Vaccine Act, 42 U.S.C. §§ 300aa-1 *et seq.*, ("Vaccine Act"), the McDonals were barred from bringing a vaccine-

---

[2] The McDonals initially sued American Home Products Corporation d/b/a Wyeth, Wyeth Laboratories, Wyeth-Ayerst, Wyeth Ayerst Laboratories, Wyeth Lederle, Wyeth Ledele Vaccines and Lederle Laboratories; Aventis Pasteur, Inc., Individually and as Successor in Interest to Connaught; Eli Lilly and Company; GlaxoSmithKline, Individually and as Successor in Interest of Smith Kline Beecham Corporation; Merck & Co., Inc.; Sigma Aldrich, Inc.; Mitzi Ferguson, M.D., Leslie Lamar Jones, M.D., and River Oaks Hospital. On January 11, 2002, the McDonals filed an amended complaint adding defendants Abbott Laboratories, Inc., Baxter International, Inc.; Emerck; GDL International, Inc.; GlaxoSmith Kline Belguim; King Pharmaceuticals, Inc.; Medeva Pharmaceuticals, Inc.; Spectrum Chemical Manufacturing Corp., and Urquima.

3

related action against the healthcare defendants until first filing a petition for relief in the United States Court of Federal Claims ("Vaccine Court").

The McDonals subsequently moved for a remand to state court asserting that the removal to federal court was procedurally defective based on the failure of all defendants to timely join in removal. The McDonals also sought to remand on the grounds the Vaccine Act failed to present a sufficient federal question. Eli Lilly, opposing the remand motion, filed a motion to amend the removal petition to reflect consent to removal by two additional defendants, GDL International, Inc. ("GDL") and Spectrum Chemical Manufacturing Corp. ("Spectrum").[3]

On June 21, 2002, the district court granted Eli Lilly's request to add GDL and Spectrum to its petition for removal. Nevertheless, the district court granted the McDonals' motion to remand on the grounds that neither diversity nor federal question jurisdiction existed. The district court rejected Eli Lilly's improper joinder claim because, in the eyes of the district court, the McDonals' claims against the Healthcare defendants possessed a reasonable probability of recovery. The district court also rejected Eli Lilly's removal petition, under the well-pleaded complaint rule, on the grounds that an affirmative defense that raises a federal question is inadequate to confer federal jurisdiction. Subsequently, based on relatively new legal developments which had not been squarely considered by the district court, the Defendants filed a motion for reconsideration on the grounds that the Vaccine Court was the exclusive judicial venue charged with exercising jurisdiction over claims for alleged Thimerosal related injuries.

_____

[3] In addition to GDL and Spectrum, the McDonals originally alleged that a third defendant, Medeva Pharmaceuticals ("Medeva"), failed to timely consent to removal as well. Prior to Eli Lilly's opposition to the McDonals' remand motion, Medeva was voluntarily dismissed. Hence, the McDonal's defective removal contention is limited to Spectrum and GDL.

On August 1, 2002, the district court granted the Defendants' reconsideration motion. The district court issued an order finding that the McDonals' claims are implicitly vaccine-related, and fall within the purview of the Vaccine Act.[4] Hence, from the district court's vantage point the resident Healthcare defendants were improperly joined, and diversity jurisdiction existed, because no reasonable probability existed that the McDonals' claims against the resident Healthcare defendants were cognizable without first exhausting those claims in the Vaccine Court prior to filing suit in state or federal court.

After finding subject matter jurisdiction proper, the district court then dismissed, *sua sponte*, the action as to all Defendants on the same basis that it affirmatively exercised jurisdiction — under the Vaccine Act, the McDonals' claims against both the diverse and non-diverse defendants must first be exhausted in the Vaccine Court prior to the McDonals filing an action in state or federal court. On appeal, the McDonals assert an error as to the propriety of the removal.

## STANDARD OF REVIEW

We review *de novo* both the district court's order denying the McDonals' motion to remand and its decision that the non-diverse parties were improperly joined. Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 311 (5th Cir. 2002).

## DISCUSSION

On appeal, the McDonals posit that the district court erred in failing to remand this action to state court because the failure of all defendants to timely consent to removal presented a clear procedural defect. In the alternative, the McDonals contend that the district court erred in granting

---

[4] Under the Vaccine Act, a specially constituted court of special masters of the Vaccine Court has initial jurisdiction to hear claims for damages resulting from alleged vaccine-related injuries to the exclusion of the state and other federal courts of the United States. See 42 U.S.C. § 300aa-11(a)(2).

5

dismissal, pursuant to the Vaccine Act, for defendants that merely made preservatives instead of manufacturing or administering the vaccines themselves. At oral argument, the McDonals presented for the first time a third and additional challenge, this time to the propriety of the removal. The McDonals argued that under the common defense "theory," a defense asserted by diverse and nondiverse defendants alike, prohibits a finding that the nondiverse party was improperly joined. Our en banc court, has recently addressed the very issue of applying the doctrine of improper joinder in the context of when a common defense is mutually asserted by all of the defendants. See Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568 (5th Cir. 2004) (*en banc*).

We begin our analysis, as we must in a diversity case, by according priority to the requirement of subject matter jurisdiction. It matters not that the propriety of the diversity of citizenship was raised for the first time on appeal, because subject matter jurisdiction is "non-waivable and delimits the power of federal courts." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999); see also Getty Oil Corp. v. Ins. Co. of North America, 841 F.2d 1254 (5th Cir. 1988) (stating that "where a federal court proceeds in a matter without first establishing that the dispute is within the province of controversies assigned to it by the Constitution and statute, the federal court poaches upon the territory of a coordinate judicial system, and its decisions, opinions, and orders are of no effect").[5] Once a jurisdictional issue is raised, Congress instructs a federal court that if at any time prior to final judgment, during a removal from state to federal court, "it appears that the [federal] district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). As a threshold matter, therefore, we must first determine whether the district court had jurisdiction to consider this

---

[5] Nonetheless, even if the McDonals' did not raise a question of jurisdiction, any federal court may raise subject matter jurisdiction *sua sponte*. Ruhrgas, 526 U.S. at 583 (stating "[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level").

action, because if we find such power lacking, then the case must be remanded back to the state court from which it came.

The district court found that diversity jurisdiction existed here because the local Healthcare defendants were improperly joined, and therefore, the district court refused to remand the action to state court. We recognize that the district court proceeded without the benefit of Smallwood's clarification of the improper joinder doctrine. Therefore we proceed to discuss these thorny issues in the context of the circumstances presented to the district court, yet with the illumination of Smallwood and subsequent case law construing it.

The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity. We have previously stated, but it bears emphasizing again, that the "burden of demonstrating [improper] joinder is a heavy one." Griggs v. State Farm Lloyds, 181 F.3d 694, 701 (5th Cir. 1999). To establish a claim for improper joinder, the party seeking removal must demonstrate either "(1) actual fraud in the pleading o f jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Travis v. Irby, 326 F.3d 644, 647 (5th Cir. 2003) (citing Griggs, 181 F.3d at 699). Under this second prong, we examine "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Smallwood, 385 F.3d at 573.[6] If no reasonable basis of recovery exists, a conclusion can be drawn

---

[6] A district court should ordinarily resolve a improper joinder by conducting a Rule 12(b)(6)-type analysis. However, in cases where the plaintiff has stated a claim, but "misstated or omitted discrete facts," the district court has the discretion to pierce the pleadings and conduct a summary inquiry. Smallwood, 385 F.3d at 573.

7

that the plaintiff's decision to join the local defendant was indeed fraudulent, *unless* that showing compels dismissal of *all defendants*.

The lesson of Smallwood is simply that there is no improper joinder when the nonresident defendant's "showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant[.]" Id. at 574. Such an allegation of improper joinder is more properly an attack on the merits of the claim, rather than an inquiry into the propriety of the joinder of the local party. Id. In other words, there is no improper joinder if a defense compels the same result for the resident and nonresident defendants, because this would simply mean that "'the plaintiff's case [is] ill founded as to all the defendants.'" Id. (quoting Chesapeake & Ohio Ry. v. Cockrell, 232 U.S. 146, 153 (1914)). Hence, a remand to state court is necessitated whenever the district court, in the guise of deciding whether the joinder was improper, departs from the threshold inquiry of jurisdiction into a decision on the merits. See, e.g., Boyer v. Snap-On Tools Corp., 913 F.2d 108, 112 (3d Cir. 1990).

We note that because the purpose underlying the improper joinder inquiry "is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." Smallwood, 385 F.3d at 573. In other words, while the focus of the improper joinder inquiry examines whether the joinder itself was improper, the purpose of the inquiry must be whether or not there is a possibility of recovery against the local defendant. As long as the asserted defense applies uniformly to all defendants and dismisses the suit as a whole, the resident defendants were no more improperly joined than the non-resident defendants.

Therefore, the district court's dismissal of this action would quite properly merit remand if the Vaccine Act afforded the same defense to all of the defendants.[7]  Said differently, if the showing of no possibility of recovery against the local defendant applies equally to all defendants, a remand would be the appropriate disposition because the initial joinder would not have been improper. See Cockrell, 232 U.S. at 153-54.  We have made plain in applying Smallwood that its central principle is implicated only when the common defense asserted would be equally dispositive as to *all* of the defendants.  See Rainwater v. Lamar Life Ins. Co., 391 F.3d 636, 638 (5th Cir. 2004).  In turn, if a district court concludes that the common defense proffered would not dispose "of every claim against every defendant, [the district court] should continue to deny remand and proceed with the proper disposition of the case." Id. at 638-39.

In its *sua sponte* order, the district court dismissed the McDonals' claims on the grounds that the express terms of the Vaccine Act had not been complied with because the McDonals had not exhausted their administrative remedies as required under the Act.  The district court's reasoning was predicated on the fact that the McDonals had failed to adhere to the Vaccine Act's statutory directives requiring claimants alleging injury or death caused by certain designated vaccines to first bring such causes of action via the United States Court of Federal Claims's "Vaccine Court." See 42 U.S.C. § 300aa-12.  The district court in this matter concluded that the McDonals' claims against all the Defendants were ultimately futile and required dismissal, as neither a state nor a federal court

---

[7] Quite obviously it would be of no consequence that the state court in question would be called upon to interpret federal law.  See, e.g., Howlett v. Rose, 496 U.S. 356, 367 (1990) ("Federal law is enforceable in state courts . . . because the Constitution and the laws passed pursuant to it are as much laws in the States as laws passed by the state legislature."); Tafflin v. Levitt, 493 U.S. 455, 458-59 (1990) ("Under [our federal] system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.")

would have jurisdiction to initially consider the merits of this case prior to its first being brought to the Court of Federal Claims. We believe that some basic understanding of the Vaccine Act's administrative framework is necessary.

The Vaccine Act was enacted by Congress, ostensibly as a federal mechanism beyond the traditional tort law paradigm to provide a trust fund for claimants asserting that they had been harmed through the use of childhood vaccines. Schafer v. American Cyanamid Co., 20 F.3d 1, 2 (1st Cir. 1994). Under the Vaccine Act, an individual may not bring a civil action in either state or federal court in excess of $1,000 in damages arising from a "vaccine-related injury or death" involving the administration of a vaccine unless a petition is first filed with United States Court of Federal Claims. 42 U.S.C. § 300aa-11(a)(2)(A). If such a barred civil action is indeed brought, the state or federal court is required to dismiss the action in its entirety. 42 U.S.C. § 300aa-11(a)(2)(B). A potentially noteworthy exception however is the fact that the term "vaccine related injury or death" does not encompass "an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such a vaccine." 42 U.S.C. § 300aa-33(5).

It was, until recently, an open question in this circuit as to whether Thimerosal constituted an adulterant or contaminant within the understanding of the Vaccine Act. However, we have recently held that a manufacturer of Thimerosal used in a vaccine should not be considered a "vaccine manufacturer" as that term is understood within the context of the Vaccine Act. See Moss v. Merck & Co., 381 F.3d 501, 503 (5th Cir. 2004). Accordingly, the Moss court found that a claim brought against a Thimerosal manufacturer would not contravene the Vaccine Act. Id. at 504.

Thus, proceeding with the benefit of the foregoing explication, we believe that the interplay between Moss and our holding in Rainwater, supra, ultimately compels the appropriate disposition

10

of this matter. The import of <u>Moss</u> is that the nonresident Thimerosal defendants in the instant case, would not be insulated from liability pursuant to the jurisdictional limitations embedded within the Vaccine Act – and therefore a civil action could be brought against them in either a state or federal forum. Conversely, we also find that the claims asserting vaccine-related injuries brought against the resident Healthcare defendants and the nonresident Vaccine defendants were required to have first been brought in the Vaccine Court. As such, the common defense corollary to the improper joinder doctrine as articulated in <u>Smallwood</u> is inapplicable in the present case and therefore, remanding this case to the Mississippi state trial court from which this case was removed would be unwarranted. <u>See</u> <u>Rainwater</u>, 391 F.3d at 638-39.

## CONCLUSION

We hold that the McDonals claims against the Thimerosal defendants, specifically Sigma-Aldrich, Eli Lilly, GDL, and Spectrum are cognizable in federal court, and the district court erred by dismissing them from this action because they are not deemed to be "vaccine administrators or manufacturers" within the understanding of the Vaccine Act. However, we also hold that the claims against the Vaccine Defendants, specifically Abbott Laboratories, Aventis Pasteur, Inc., Baxter International, Inc., Merck & Company, Inc, SmithKline Beecham Corporation d/b/a/ GlaxoSmithKline, and Wyeth f/k/a American Home Products Corporation, are not cognizable because they were not initially brought before the Vaccine Court, therefore the district court did not err by dismissing the Vaccine Defendants from this action. Further, because the resident Healthcare defendants, Mitzi Ferguson, M.D., Leslie Lamar Jones, and River Oaks Hospital should also have properly been dismissed from this action, we affirm the district court's determination as it pertained to the dismissal of them.

11

AFFIRMED IN PART, REVERSED IN PART, REMANDED.